UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANDREA ANDREOLI,
    *Plaintiff*,

v.

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC *et al.*,
    *Defendants*.

No. 3:19-cv-00954 (JAM)

### ORDER RE MOTIONS TO COMPEL ARBITRATION

Angelina Andreoli alleges that her boss sexually harassed and assaulted her. She has filed this lawsuit against him as well as two companies that she claims jointly employed her. Both companies have filed motions to compel arbitration and to stay this action. I will grant one of the motions but deny the other.

#### BACKGROUND

Defendant Comcast Cable Communications Management LLC ("Comcast") is an affiliate of the Comcast Corporation and markets cable television, internet, telephone, and wireless services to thousands of Connecticut residents. Defendant Credico USA LLC ("Credico") provides sales and marketing services to telecommunications companies like Comcast.

Plaintiff Angelina Andreoli alleges that she began working in June 2017 for both Credico and Comcast to market and sell Comcast products and services. She alleges that her supervisor—a Comcast sales executive named William Mullen—subjected her to repeated acts of sexual harassment and assault.

Andreoli filed this lawsuit in Connecticut state court against Comcast, Credico, and Mullen alleging numerous claims of harassment, assault, and related claims arising under the Connecticut Fair Employment Practices Act and common law. Comcast and Credico timely

removed the action to federal court on the basis of federal diversity jurisdiction. Mullen has apparently moved to Thailand and has not otherwise participated in this action.

Comcast and Credico have now filed motions to compel arbitration. They rely on an arbitration provision set forth in a "Service Agreement" contract that was executed by Credico and an entity known as Gianni Rae Associates, Inc. ("GRA"). Andreoli is the chief executive officer of GRA, and she signed the Service Agreement on GRA's behalf in connection with the sales and marketing services that she would provide to Comcast as a GRA agent or employee.

The Service Agreement contains an arbitration clause that reads, in relevant part:

> Subcontractor [GRA] and Credico agree to arbitrate all the disputes and claims between the parties. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to . . . claims arising out of or relating to any aspect of the relationship between Subcontractor and Credico, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory . . .
>
> References to Credico, Subcontractor, and "the parties" include the parties' respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns . . .

Doc. #19-7 at 15 (§ 26). Importantly, the Service Agreement further provides that it "shall be governed by and construed in accordance with the law of the state of Illinois, without giving effect to its conflicts of laws principles." *Id.* at 15 (§ 25).

## DISCUSSION

When deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, . . . together with . . . affidavits," and must "draw all reasonable inferences in favor of the non-moving party." *Ibid*.

2

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, requires enforcement of agreements to arbitrate, embodying "a national policy favoring arbitration." *Nicosia*, 834 F.3d at 228–29; *accord AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011); *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). Still, arbitration "is a matter of consent, not coercion," and therefore the FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

A motion to compel arbitration requires a court to consider at the outset whether the parties have actually agreed to arbitration. *See Starke*, 913 F.3d at 288. This question is governed by state contract law. *Ibid.; accord Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73-74 (2d Cir. 2017). Here, the parties have agreed to the application of Illinois law.

### *Arbitration with Credico*

Credico moves to compel arbitration on the basis of the arbitration provision in the Service Agreement. Andreoli objects that she did not personally bind herself when she signed the Service Agreement in her capacity as chief executive officer of GRA. Under Illinois law, "[w]hen an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound." *Wottowa Ins. Agency, Inc. v. Bock*, 104 Ill. 2d 311, 315 (1984); *Sullivan v. Cox*, 78 F.3d 322, 326 (7th Cir. 1996) (same).

But here there is evidence of a contrary intent to bind Andreoli to arbitrate. The arbitration provision expressly provides that "references to Credico, Subcontractor, and 'the parties' includes the parties' respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns." Doc. #19-7 at 15. As chief executive officer of GRA,

3

Andreoli was without a doubt an "agent" or "employee" of GRA. So when she agreed to arbitration on behalf of GRA, she surely knew that she was agreeing to bind herself as an agent or employee of GRA.

In *Carter v. SSC Odin Operating Co., LLC*, 2012 IL 113204, the Illinois Supreme Court considered an agreement that, like the one in this case, was signed by one party (there plaintiff Carter) on behalf of another party (a Ms. Gott, who was deceased), and contained an arbitration clause binding the decedent's "successors, assigns, agents, attorneys, insurers, heirs, trustees, and representatives, including the personal representative or executor of . . . her estate." *Id*. at ¶ 56. The Illinois Supreme Court explained that, although "it goes without saying that a contract cannot bind a nonparty," *id*. at ¶ 55 (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)), the agent signatory was nonetheless bound to arbitrate "to the extent that [Carter was] acting in Gott's stead," *id*. at ¶ 56. In the same manner, Andreoli signed the arbitration agreement in GRA's stead, and any displacement of individual responsibility caused by her signing in her corporate title capacity was undone by the express terms of the agreement individually binding her as one of GRA's agents or employees.[1]

Matters might be different if some third person signed an agreement on behalf of GRA that purported to bind Andreoli and without evidence that Andreoli consented to be bound by GRA. *See, e.g.*, *Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 559 (5th Cir. 2011) (declining to enforce arbitration agreement against corporate president solely in that capacity in the absence of an agreement allowing company to contract on behalf of the president as an individual). But

---

[1] The principal case on which Andreoli relies to the contrary, *TicketNetwork, Inc. v. Darbouze*, 133 F. Supp. 3d 442 (D. Conn. 2015), is inapposite both because it applies Connecticut rather than Illinois law, *see, e.g.*, *id*. at 452 n. 10, and because in *Darbouze*, unlike here, the party seeking to compel arbitration did "not claim that [the counterparty] may be compelled to arbitrate as a non-signatory," *id*. at 454.

4

Andreoli agreed to bind herself individually as an agent and employee of GRA in the very contract she signed with Credico on GRA's behalf. Accordingly, I will grant Credico's motion to compel arbitration with respect to Andreoli's claims against Credico.

### *Arbitration with Comcast*

Comcast moves to compel Andreoli to arbitrate her claims against Comcast, despite conceding that it has no contract with Andreoli or with GRA, much less an agreement to arbitrate any disputes between them. Ordinarily, the absence of such an agreement would be enough to conclude the matter, because "arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004). Nevertheless, Comcast argues that Andreoli is equitably estopped from refusing to arbitrate her claims with Comcast.

Comcast cites a line of Second Circuit cases holding that equitable estoppel is available to compel a party who has signed an agreement to arbitrate with a non-signatory where (1) the issues that the non-signatory is seeking to resolve in arbitration are intertwined with those that are subject to an arbitration agreement, and (2) the relationship among the parties justifies a conclusion that the party who agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the non-signatory to the arbitration agreement. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126-27 (2d Cir. 2010).[2]

Indeed, the facts of *Ragone* are very similar to those of this case. It involved a makeup artist who was employed by a contractor (AVI) and who was sexually harassed in the course of

---

[2] *See also Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d. Cir. 2008); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004); *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001); *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc*., 98 F.3d 88, 98 (2d Cir. 1999).

her work with the contractor's ultimate client (ESPN), and who then sued AVI (with whom she agreed to arbitrate) and ESPN (with whom she had no contract at all). The court of appeals in *Ragone* applied equitable estoppel to conclude that the plaintiff should be compelled to arbitrate with non-signatory ESPN in light of her agreement to arbitrate with AVI. *Id.* at 127.

But *Ragone*, and the other cases Comcast cites, do not apply Illinois law as I am required, without contradiction, to do here.[3] The Supreme Court has made it clear that the FAA does not purport "to alter background principles of *state* contract law regarding the scope of agreements (*including the question of who is bound by them*)," and that doctrines such as "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and *estoppel*," which might "allow a contract to be enforced by or against nonparties to the contract" are "traditional principles of *state* law." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009) (emphasis added).

As numerous federal appeals courts have held in light of the Supreme Court's ruling in *Arthur Anderson*, federal courts are not free to apply free-floating federal common law principles of equitable estoppel in the arbitration context but instead must follow the requirements of applicable state law. *See, e.g.*, *White v. Sunoco, Inc.*, 870 F.3d 257, 263 (3d Cir. 2017); *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752-53 (7th Cir. 2017); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013); *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166,

---

[3] Comcast expressly "joined Credico's motion" on the issues of "the legal standard governing a motion to compel arbitration . . . and . . . the general application of that legal standard to the facts at hand," specifically citing to the section of Credico's brief where it acknowledges the Illinois choice of law clause. *See* Doc. #25-1 at 4. But having acknowledged Illinois law as governing this dispute, Comcast's brief goes on to cite cases applying the laws of New York, Connecticut, California, Arizona, Missouri, Arkansas, and even the sea, but not one case applying Illinois law. Nor does Andreoli's threadbare briefing cite or acknowledge the application of Illinois law.

1171 (11th Cir. 2011); *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009).[4]

Likewise, the Second Circuit has explained that when the parties have agreed to arbitrate in a contract that expressly selects the law of a given jurisdiction, that choice-of-law clause governs the question of who has agreed to arbitrate. In *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004), for example, one of the parties to an arbitration agreement sought to compel a non-party to arbitrate based on the doctrine of equitable estoppel stemming from an arbitration agreement containing a Swiss choice-of-law clause. *Id*. at 49-50. The Second Circuit rejected the parties' invitation to apply a federal equitable estoppel rule to the arbitration clause, holding instead that Swiss law would determine whether and to what extent equitable estoppel applied, explaining that Swiss law must be applied because "where the parties have chosen the governing body of law, honoring their choice is necessary to ensure uniform interpretation and enforcement of that agreement and to avoid forum shopping . . . furthermore, respecting the parties' choice of law is fully consistent with the purposes of the FAA." *Id*. at 51.

All this makes sense. When the only possible basis for Comcast's equitable estoppel claim is a contract that declares itself to be governed by the law of Illinois, it would do violence to the parties' agreement and the principles of the FAA to invoke equitable doctrines from any other jurisdiction. *See Volt*, 489 U.S. at 479. Comcast's motion to compel arbitration on grounds of equitable estoppel is governed by Illinois law.

---

[4] In *Ragone*, the Second Circuit invoked equitable estoppel by reference to "common law principles of contract law," and relied on prior federal case pronouncements of the requirements for equitable estoppel without reference to the law of any particular State. *Ragone*, 595 F.3d at 126. This approach is inconsistent with the Supreme Court's instruction to apply state law in *Arthur Anderson*, a decision which the Second Circuit in *Ragone* did not cite or acknowledge. *See also Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.,* 845 F.3d 1351, 1355 n.1 (11th Cir. 2017) (disavowing prior precedent that "applied federal case law when analyzing the doctrine of equitable estoppel," which was "error" because "[s]tate law, not federal law, applies.").

And the particulars of Illinois law critically matter here, because the Illinois law of equitable estoppel requires a non-signatory who seeks to compel arbitration to show that it detrimentally relied on the statements or conduct of the party signatory to an arbitration agreement who seeks to avoid arbitration with the non-signatory. *See Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 514 (2004). Moreover, the non-signatory must make this showing of prejudicial reliance by clear, concise, and unequivocal evidence. *Ibid.*

Thus, in *Ervin*, the Illinois Appellate Court expressly rejected arguments to expand the doctrine of equitable estoppel to compel arbitration where there had been no prejudicial reliance by a non-signatory defendant (Nokia, a cell phone manufacturer) on the fact of an arbitration agreement between a consumer plaintiff and another defendant (AT&T, the company from whom the plaintiff bought a Nokia phone). The *Ervin* court declined to apply "a definition of equitable estoppel that has been accepted in several federal courts to allow a nonsignatory to compel the arbitration of claims brought by a signatory to an arbitration agreement," because such an "expanded interpretation of equitable estoppel" would be "inconsistent with the basic principle of arbitration" based on consent. *Id*. at 515, 516.

The Seventh Circuit applied Illinois law to reach the same result in *Warciak v. Subway Restaurants, Inc.*, 880 F.3d 870 (7th Cir. 2018). It refused to apply equitable estoppel to allow a non-signatory (Subway) to compel a consumer plaintiff to arbitrate its dispute with Subway on the basis of the consumer's agreement to arbitrate with a telephone company (T-Mobile) that transmitted promotional texts for Subway's products. The Seventh Circuit concluded "that Subway cannot rely on estoppel to enforce T-Mobile's arbitration agreement against Warciak," because "Subway cannot show detrimental reliance" on any statements or conduct of Warciak in connection with Warciak's agreement to arbitrate with T-Mobile. *Id.* at 872.

Other decisions applying Illinois law come to the same conclusion. *See Guarantee Tr. Life Ins. Co. v. Platinum Supplemental Ins., Inc.*, 2016 IL App (1st) 161612, ¶¶ 42-43; *CCC Info. Servs. Inc. v. Tractable Inc.*, 2019 WL 2011092, at *4 (N.D. Ill. 2019); *Applications Software Tech. LLC v. Kapadia*, 2018 WL 3122173, at *5 (N.D. Ill. 2018); *see also Scheurer*, 863 F.3d at 753 (applying Wisconsin law and its similar detrimental reliance requirement to reject application of equitable estoppel to require plaintiff to arbitrate with non-signatory to arbitration agreement in the absence of any evidence that the non-signatory even knew about the arbitration agreement). These decisions are all in keeping with the principle, articulated by the Colorado Supreme Court in a description of the common law more broadly, that "[e]quitable estoppel is more properly viewed as a shield to prevent injustice rather than a sword to compel arbitration." *Santich v. VCG Holding Corp.*, 2019 CO 67 ¶ 10 (Colo. 2019) (quoting *Hirsch v. Amper Fin. Servs.*, 215 N.J. 174 (2013)).

Comcast makes no showing that it detrimentally relied upon the fact that Andreoli signed an arbitration agreement with Credico. Therefore, Comcast has not established grounds for equitable estoppel under Illinois law. And because Comcast's briefing does not raise any alternative grounds other than equitable estoppel to compel arbitration, any additional grounds are waived. *See Scheurer*, 863 F.3d at 755 (finding waiver of alternative grounds to compel arbitration that were not timely raised).[5]

---

[5] By way of footnote, Comcast argues that, if I compel arbitration between Credico and Andreoli (as I must), I should likewise compel arbitration between Andreoli and Comcast because permitting piecemeal arbitration "might well result in duplicative litigation and/or inconsistent judgments." *D'Attilo v. Koskoff, Koskoff & Bieder, P.C.*, 2015 WL 1867335, at *14 (Conn. Super. Ct. 2015). But this argument ignores the fact that arbitration is a creature of the parties' consent, and "[t]he Supreme Court has made clear that '[t]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, *even if the result is "piecemeal" litigation*.'" *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 142 (2d Cir. 2011) (emphasis in original) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). The FAA does not permit a court to disregard the limits on what parties have agreed to for the sake of judicial economy and efficiency.

9

*Stay pending arbitration*

In light of my grant of Credico's motion to compel Andreoli to arbitrate her claims against Credico, I will grant Credico's corresponding motion to stay Andreoli's litigation of her claims against Credico in this action. It remains for me to determine whether, in light of my denial of Comcast's motion to compel Andreoli to arbitrate her claims against Comcast, I should stay at this time the litigation of Andreoli's claims against Comcast or Mullen in this action.

"When an issue is pending in both arbitration and litigation, the Federal Arbitration Act generally requires the arbitration to go forward first; arbitration 'should be given priority to the extent it is likely to resolve issues material to this lawsuit.' This has been the practice in all the federal courts." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (quoting *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777, 783 (8th Cir. 2001), and collecting federal cases).

But the decision of whether to stay a litigation so that a related arbitration can go forward "is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n. 23 (1983). "The defendants have the burden of establishing that a stay is warranted." *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co.*, 339 F.2d 440, 442 (2d Cir. 1964). In setting out factors for the district court to consider in its discretion, the Second Circuit "point[ed] out that the defendants should demonstrate to the satisfaction of the court that they have not taken nor will take any steps to hamper the progress of the arbitration proceeding, that the arbitration may be expected to conclude within a reasonable time, and that such delay as may occur will not work undue hardship." *Ibid*; *see also Donjon Marine Co. v. Water Quality Ins. Syndicate*, 523 F. App'x 738, 740 (2d Cir. 2013) (same).

Credico's motion makes no argument or showing how it would be prejudiced by allowing Andreoli to litigate its claims against Comcast. Doc. #19-1 at 14. Comcast, for its part, has argued solely that a stay is warranted because *Credico* could suffer prejudice from being forced to participate in discovery. Doc. #25-1 at 9 n. 7. Comcast has no standing to raise claims of prejudice on behalf of Credico, and has otherwise made no attempt to articulate why the *Nederlandse* factors weigh in favor of staying the entire action pending the Andreoli-Credico arbitration. Nor is it clear to me that Comcast has any basis, at least at this stage in the proceedings, for claiming a failure to stay the action would subject it to undue prejudice, given that it cannot compel Andreoli to arbitrate claims against it.

If Credico believes it will suffer unfair prejudice from the litigation of Andreoli's claims against Comcast and/or Mullen, then it may file a properly supported motion to stay and that demonstrates why any prejudice could not be redressed by means of alternative measures such as curtailing the scope of court-ordered discovery against Credico in connection with Andreoli's claims against Comcast. In the event that Credico is considering the filing of a renewed motion to stay, I encourage Andreoli and Credico to consider whether another round of motions litigation might be avoided by means of reaching some agreement to address Credico's concerns.

## Conclusion

For the reasons set forth above, Credico's motion to compel arbitration (Doc. #20) is GRANTED. Comcast's motion to compel arbitration (Doc. #25) is DENIED. This action is STAYED as to Andreoli's claims against Credico pending the outcome of arbitration between Andreoli and Credico, but this action is not stayed as to Andreoli's claims against Comcast and

11

Mullen, without prejudice to filing of a renewed motion to stay. It is so ordered.

Dated at New Haven this 16th day of March 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge